## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAVIER AZUL LOPEZ, | : | |
| on behalf of himself and all others | : | |
| similarly situated, | : | No. 17- |
| | : | |
| Plaintiff, | : | CLASS ACTION |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| EDGE  INFORMATION  MANAGEMENT, | : | |
| INC., | : | |
| | : | |
| Defendant | | |

## COMPLAINT – CLASS ACTION

## PRELIMINARY STATEMENT

1.      This is a consumer class action based upon Defendant Edge Information

Management, Inc.'s violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*

("FCRA").   Plaintiff brings this action on behalf of thousands of employment applicants

throughout the country who have been the subject of background reports performed by the

Defendant and sold to employers and prospective employers.   Defendant has adopted and

maintained a policy and practice of recklessly and willfully failing to obtain and report complete

and up to date public record information.   The prejudice caused by the reporting of adverse

public record information that is not complete or up to date is exacerbated by Defendant's failure

to notify the consumer contemporaneously of the fact that the erroneous adverse information is

being sent to an employer or prospective employer.

2.      As a result, consumers who are entitled to receive copies of their credit files from

Defendant pursuant to section 1681k of the FCRA are deprived of full, proper and timely

disclosures, and are unable to adequately verify and/or dispute the information that Defendant is

selling to employers and prospective employers.  Defendant's practice harms consumers seeking employment by prejudicing their prospective employers with incomplete and misleading, adverse information, and also harms interstate commerce as a whole.  This practice is exactly the type of behavior the FCRA was enacted to prevent.  The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C. § 1681(a)(4), by operating "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy" of the consumer information they disseminate.  15 U.S.C. § 1681(b).

3.      In addition, in violation of 15 U.S.C. § 1681g(a)(2), Defendant systemically misrepresents to consumers the source of the criminal record information that it places on their consumer reports.  Defendant thus deprives consumers of valuable, congressionally-mandated information and makes it more difficult for consumers such as Plaintiff to correct errors relating to these public records that are caused by Defendant and/or its private vendor sources, but not by any courthouse or other government body that Defendant misidentifies as its source.

4.      Plaintiff also brings an individual claim for Defendant's willful and negligent failure to follow reasonable procedures to assure maximum possible accuracy of his consumer report, as required under section 1681e(b) of the FCRA.

## II.      JURISDICTION AND VENUE

5.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

6.      Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III.      PARTIES

7.      Plaintiff Javier Azul Lopez is an adult individual who at all pertinent times resided and sought employment within the Commonwealth of Pennsylvania.

8.      Defendant Edge Information Management, Inc. ("Edge") regularly conducts business nationwide and in this District, and has a principal place of business at 1682 W. Hibiscus Boulevard, Melbourne, Florida 32901.

## IV.      FACTUAL ALLEGATIONS

**A.      Defendant's Practices As A Consumer Reporting Agency And Furnisher Of Consumer Reports For Employment Purposes**

9.      At all times pertinent hereto, Defendant was a consumer reporting agency ("CRA") as defined by Section 1681a(f) of the FCRA.

10.      At all times pertinent hereto, Plaintiff was a "consumer" as defined by Section 1681a(c) of the FCRA.

11.      Among other things, the FCRA regulates the collection, assembly, maintenance, and disclosure of consumer reports by CRAs, including public record information.

12.      Defendant obtains distilled and incomplete public record information, including criminal record history, from third party databases and maintains such data in consumer files that it creates and assembles.

13.      Defendant sells such consumer reports to potential employers wishing to investigate the criminal record history, or lack thereof, with regard to various job applicants. According to Defendant's website it is "a national provider of employment screening services," and services "over 10,000 national and international locations." *See* http://www.edgeinformation.com/company/about-us/ (last visited January 10, 2017).

14.      When a CRA furnishes a consumer report for employment purposes, and compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment, the CRA has two options.  It must either (a) notify the consumer of the fact that adverse public record

information is being reported by the CRA *at the time* the public record information is reported to the user of the consumer report, together with the name and address of the person to whom such information is being reported, 15 U.S.C. § 1681k(a)(1); or, (b) maintain strict procedures designed to assure that whenever public record information that is likely to have an adverse effect on a consumer's ability to obtain employment is reported, that information is complete and up-to-date.  15 U.S.C. § 1681k(a)(2).

15.    CRAs have been on notice of this issue for the past fifteen years, as the Fourth Circuit highlighted a CRA's duties under section 1681k:

> When a consumer reporting agency furnishes a report that contains matters of public record likely to have an adverse effect upon the consumer's ability to obtain employment, it is obligated to do one of two things: (1) notify the consumer contemporaneously with the transmission of the report to the user or (2) "maintain strict procedures" designed to ensure the information is "complete and up to date."

*Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 417 (4th Cir. 2001) (internal citations omitted).

16.    Despite these clear, well-established and unambiguous requirements of the FCRA, Edge regularly fails to obtain and report complete and up to date public record information.

17.    As a result of Defendant's failure to obtain and report public records that are complete and up to date, it is required to provide consumers with notification at the time it provides a consumer report to employer, but fails to do so pursuant to corporate policy.

18.    Defendant has deliberately, willfully, recklessly and negligently adopted a policy and practice that disregards its duty to either maintain strict procedures to insure that its reporting is complete and up to date or send notice at the time that it sells adverse public record information for employment purposes, in violation of the FCRA.

19.     The FCRA also requires CRAs such as Defendant to clearly and accurately disclose to consumers who request their credit file all information that the CRA maintains about them, including the sources that supplied the information.  15 U.S.C. § 1681g(a); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711-12 (3d Cir. 2010); *Dennis v. Trans Union, LLC*, 2014 WL 5325231 (E.D. Pa. Oct. 24, 2014).

20.     Defendant fails, however, as a matter of common policy and procedure, to provide consumers who request file disclosures with all information Defendant maintains about the requesting consumer, including never disclosing to consumers the source of the criminal record information it collects and reports about them.

21.     Moreover, CRAs are required to follow reasonable procedures to assure maximum possible accuracy of the information they sell, and that the information on a given consumer's report actually concerns that consumer and not any other person.  *See* 15 U.S.C. § 1681e(b).

**B.     <u>The Experience Of The Representative Plaintiff</u>**

22.     In or around the beginning of April 2015, Plaintiff applied for employment with AutoZone Parts, Inc.  ("AutoZone").

23.     In or around April 2015, Plaintiff was invited to and participated in an in-person interview with a manager for AutoZone. During this interaction, Plaintiff signed a form authorizing AutoZone to pull his background report.

24.     One or two weeks later, Plaintiff was invited to and participated in a second in-person interview with a different manager for AutoZone. AutoZone's manager told Plaintiff that she would call Plaintiff later and Plaintiff left the interview believing that he was going to be hired by AutoZone.

25.     AutoZone enlisted Edge to conduct a background report, including a criminal background check, on Mr. Lopez and to provide the results to it so that it could determine if Mr. Lopez met AutoZone's hiring criteria.

26.     On April 15, 2015, AutoZone received, electronically, a background report from Edge concerning Mr. Lopez which inaccurately reported Mr. Lopez as having been convicted of the felonies of accidents involving death or personal injury, a misdemeanor of simple assault, and another misdemeanor for recklessly endangering another person.

27.     All of the criminal record history reported by Edge to AutoZone was inaccurate. Mr. Lopez was never charged with and is not the perpetrator of any of these crimes.

28.     After Plaintiff's second interview and not hearing from AutoZone, Plaintiff contacted AutoZone to inquire about his status and was provided the telephone number to Defendant.

29.     Plaintiff telephoned Edge and requested the information contained in his consumer file.  Edge then emailed Plaintiff a copy of the report on or about April 17, 2015.

30.     The Edge report was not the actual, complete and up-to-date public record because Edge does not obtain the complete public record.

31.     For example, had the Edge report provided the date of birth, driver's license number or social security number or other personal identifying information that were available in the court files and attributed to the perpetrator in each of these criminal records, it would be obvious that the records did not belong to the Plaintiff.

32.     Because Edge omits all of this information from its consumer reports, and this information is available in the court file, the public record information that Edge has is incomplete.

33.     Edge does not obtain complete public records of the individuals about whom it prepares consumer reports for employment purposes, and therefore Edge does not maintain strict procedures designed to insure that the public record information it reports to users is complete and up-to-date under section 1681k(a)(2) of the FCRA.

34.     Therefore, Edge was required to comply with the notice provisions of section 1681k(a)(1) of the FCRA.

35.     In violation of section 1681k(a)(1), Edge did not notify Plaintiff of the fact that public record information concerning him was being reported by Edge, at the time such public record information was reported to AutoZone.

36.     As a result of Edge's report, AutoZone stopped the onboarding process and Mr. Lopez lost the job.

37.     Plaintiff requested a copy of his consumer file and Edge mailed a copy of the report to Plaintiff.

38.     Nevertheless, and pursuant to its systemic practice, Defendant failed to disclose to Plaintiff any information about its vendor, Defendant's true source of the criminal history at issue.

39.     On or about July 23, 2015, Plaintiff's counsel sent Edge correspondence along with a copy of the report disputing that the report was inaccurate, and that the criminal history did not belong to Mr. Lopez, but instead to his father which could be determined by reviewing the docket sheet available on the website of the Pennsylvania Unified Judicial System.

40.     The multiple inaccurate criminal records contained in the Edge background report belonged to the father of Mr. Lopez, as Mr. Lopez himself had no conviction records of any kind. As explained in more detail below, the sole reason the inaccurate criminal records were

reported as belonging to Mr. Lopez was that Edge failed to use reasonable procedures to assure the maximum possible accuracy in preparing the Edge background report. Had Edge followed such duties, it would have discovered that such records did not belong to Mr. Lopez and it would not have reported them to his prospective employer.

41.     For example, the criminal records belonged to someone with a different date of birth, social security number, drivers' license number, and middle name.  Despite this, Edge falsely attributed these criminal records to the Plaintiff due to its lax matching criteria.

42.     Any routine reference to, casual consideration of or rudimentary inspection of the actual public records referenced in the Edge background report by a reasonable person or company would have revealed that the records did not belong to Mr. Lopez.  Any simple computer programmed or automated cross-referencing procedure of the actual court data with the personal identifying information of Mr. Lopez would have also raised significant caution that the information Edge reported to AutoZone was inaccurate.  For each record, the actual public record pertained to Mr. Lopez's father, who although has the same first and last name as Plaintiff, has a different date of birth more than two decades apart.

43.     In addition to recklessly reporting the inaccurate criminal history about Mr. Lopez to AutoZone, Edge knowingly and intentionally communicated the following false statements:

**THIS REPORT DOES NOT GUARANTEE THE ACCURACY OR TRUTHFULNESS OF THE INFORMATION AS TO THE SUBJECT OF THE INVESTIGATION, BUT ONLY THAT IT IS ACCURATELY COPIED FROM PUBLIC RECORDS, AND INFORMATION GENERATED AS A RESULT OF IDENTITY THEFT, INCLUDING EVIDENCE OF CRIMINAL ACTIVITY, MAY BE INACCURATELY ASSOCIATED WITH THE CONSUMER WHO IS THE SUBJECT OF THE REPORT.**

44.     Such identical language appeared in the thousands of Edge reports sold throughout the country during the class period and is uniformly false when Edge does not retrieve and communicate the complete and actual full public record.

45.     On or about July 28, 2015, Edge sent Mr. Lopez correspondence indicating that Edge contacted Philadelphia County, PA Criminal, and had revised the information contained in Mr. Lopez's original report, and also sent a revised copy to the employer who had requested it.

46.     As a result of Edge's repeated and widespread violations of the FCRA, Mr. Lopez lost a job opportunity and remained without full-time employment for a significant period of time, and suffered a range of actual damages including lost wages, damage to his reputation, embarrassment, humiliation and emotional and mental distress.

## V.     CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following classes:

**Section 1681k Class**
All natural persons residing within the United States and its Territories who, beginning five (5) years prior to the filing of this Complaint and continuing through the conclusion of this action, were the subject of an employment consumer report prepared by Defendant which included any adverse criminal or public record information (including any judgment of conviction, arrest, bankruptcy, civil judgment or tax lien), where the report did not include the personal identifying information (address, date of birth, social security number, drivers' license, etc.) that was included in the public record information.

**Section 1681g Class**
All natural persons residing within the United States and its Territories who, beginning five (5) years prior to the filing of this Complaint and continuing through the conclusion of this action, made a request to Defendant which constituted or which Defendant treated as a request for a full file disclosure, and to whom Defendant sent a document which included criminal record information but did not include the source of that information.

48.     Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

49.     **Numerosity.  Fed. R. Civ. P. 23(a)(1).**  The Class members are so numerous that joinder of all is impractical. Edge sells thousands of consumer reports on employees and applicants for employment each year, and those persons' names and addresses are identifiable through documents maintained by Defendant.

50.     **Common Questions of Law and Fact.  Fed. R. Civ. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Classes, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

a)      Whether Defendant violated section 1681k of the FCRA by failing to notify consumers contemporaneously of the fact that criminal record information is being sent to prospective employers;

b)      Whether Defendant willfully violated section 1681k of the FCRA by failing to maintain strict procedures to assure that the information is complete and up-to-date; and,

c)      Whether Defendant violated the FCRA by failing to provide all of the information it maintains about consumers upon request, including the source(s) of criminal record information.

51.     **Typicality.  Fed. R. Civ. P. 23(a)(3)**.  Plaintiff's claims are typical of the claims of each Class member, which all arise from the same operative facts and are based on the same legal theories.

52.     **Adequacy.  Fed. R. Civ. P. 23(a)(4).**  Plaintiff is an adequate representative of the Classes because his interests are aligned with, and are not antagonistic to, the interests of the

members of the Classes he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously.  Plaintiff and his counsel will fairly and adequately protect the interests of members of the Classes.

53.     **Predominance and Superiority.  Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Edge's conduct.  It would be virtually impossible for the members of the Classes individually to redress effectively the wrongs done to them.  Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Edge's conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VI.     <u>CAUSES OF ACTION</u>

### <u>COUNT I</u>
### Fair Credit Reporting Act, 15 U.S.C. § 1681k
### <u>(On behalf of Plaintiff and Class)</u>

54.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

55.     Defendant is a "person" and "consumer reporting agency" as defined by sections 1681a(b) and (f) of the FCRA.

56.     Plaintiff is a "consumer," as defined by section 1681a(c) of the FCRA.

57.     The above-mentioned background reports are "consumer reports" as defined by section 1681a(d) of the FCRA.

58.     Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable for violating FCRA section 1681k by engaging in the following conduct:

        a)     Failing to notify consumers contemporaneously of the fact that adverse public and criminal record information is being provided to employers or prospective employers; and

        b)     Failing to maintain strict and reasonable procedures to ensure that the adverse information being reported is complete and up to date.

**COUNT II**
**Fair Credit Reporting Act, 15 U.S.C. § 1681g(a)**
**(On behalf of Plaintiff and Class)**

59.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

60.     Pursuant to 15 U.S.C. §§ 1681n and 1681o, Defendant is liable to Plaintiff for failing to provide a complete copy of all the information in his file upon request, in violation of FCRA section 1681g(a).

## COUNT III
### Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)
### (On behalf of Plaintiff)

61.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

62.     Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable to Plaintiff individually by violating section 1681e(b) of the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the reports it sells about him to third parties such as AutoZone.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes pray for relief as follows:

A.     An order certifying the proposed Classes under Rule 23 and appointing Plaintiff and the undersigned counsel of record to represent same; and

B.     An award of statutory and punitive damages for Plaintiff and the Classes;

C.     An award of statutory, actual and punitive damages for Plaintiff individually;

D.     An award of pre-judgment and post-judgment interest as provided by law;

E.     An award of attorneys' fees and costs; and

F.     Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests and demands a trial by jury.

Respectfully submitted,

Dated: January 12, 2017

**FRANCIS & MAILMAN, P.C.**

BY:    */s/ James A. Francis*
JAMES A. FRANCIS
JOHN SOUMILAS
DAVID A. SEARLES
LAUREN KW BRENNAN
Land Title Building, Suite 1902
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

**COMMUNITY LEGAL SERVICES, INC.**
SHARON M. DIETRICH
1424 Chestnut Street
Philadelphia, PA  19102
215-981-3700

**KELLY & CRANDALL, PLC**
Kristi Cahoon Kelly, Esq. (*pro hac vice forthcoming*)
Camille A. Crandall, Esq. (*pro hac vice forthcoming*)
Andrew J. Guzzo, Esq. (*pro hac vice forthcoming*)
4084 University Drive, Suite 202A
Fairfax, VA 22030
Phone: 703-424-7572
Fax: 703-591-0167

*Attorneys for Plaintiff and the Class*